IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SAMUEL D. WILLIAMS,

    Plaintiff,                 No. CIV S-07-0545 DAD

    vs.

MICHAEL J. ASTRUE,             <u>ORDER</u>
Commissioner of Social Security,

    Defendant.
_____/

        This social security action was submitted to the court without oral argument for ruling on plaintiff's amended motion for summary judgment and defendant's cross-motion for summary judgment. For the reasons explained below, the court will affirm the decision of the Commissioner of Social Security (Commissioner).

## PROCEDURAL BACKGROUND

        Plaintiff applied for Supplemental Security Income (SSI) under Title XVI on January 27, 2004.[1] The record does not include a copy of plaintiff's application, but it appears that plaintiff alleged disability beginning January 27, 2003, based on back pain, muscle spasms, sleep disorder, and depression. (Transcript (Tr.) at 13, 19-20, 26, 48.) The application was

---

[1] Plaintiff previously applied for benefits under both Title II and Title XVI in 1996 and 2001. (Tr. at 218, 43-45.) Both applications were denied and are not at issue in this case.

1

denied initially on August 6, 2004 and upon reconsideration on July 29, 2005. (Tr. at 19-20, 24.) Pursuant to a timely request made by plaintiff's counsel, a hearing was held before an administrative law judge (ALJ) on August 9, 2006. (Tr. at 13, 32, 230-53 ). Plaintiff testified at the hearing, as did a vocational expert. (Tr. at 234-51, 251-52.)

In a decision dated October 20, 2006, the ALJ entered the following findings:

> 1. The claimant has not engaged in substantial gainful activity since January 27, 2003, the alleged onset date (20 CFR 416.920(b) and 416.971 *et seq.*).
>
> 2. The claimant has the following severe impairment: osteoarthritis (20 CFR 416.920(c)).
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to sit for six hours, stand for six hours, and walk for six hours. Additionally, the claimant is able to lift 50 pounds occasionally and 25 pounds frequently.
>
> 5. The claimant has no past relevant work (20 CFR 416.965).
>
> 6. The claimant was born on March 3, 1956 and was 47 years old on the date the application was filed, which is defined as a younger individual age 45-49 (20 CFR 416.963).
>
> 7. The claimant has a limited education and is able to communicate in English (20 CFR 416.964).
>
> 8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).
>
> 9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.960(c) and 416.966).
>
> 10. The claimant has not been under a "disability," as defined in the Social Security Act, since January 27, 2004 (20 CFR 416.920(g)), the date the application was filed.

(Tr. at 15-18.)

On March 5, 2007, the Appeals Council denied plaintiff's request for administrative review of the ALJ's decision. (Tr. at 5-9.) Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on March 20, 2007.

**LEGAL STANDARD**

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record as a whole and the proper legal standards were applied. Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing Morgan, 169 F.3d at 599); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)).

A reviewing court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. Jones, 760 F.2d at 995. The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence, Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

In determining whether or not a claimant is disabled, the ALJ should apply the five-step sequential evaluation process established under Title 20 of the Code of Federal

/////

Regulations, Sections 404.1520 and 416.920. <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-42 (1987). The five-step process has been summarized in the Ninth Circuit as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

<u>Lester v. Chater</u>, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. <u>Yuckert</u>, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. <u>Id.</u>; <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999).

## APPLICATION

In support of his motion for summary judgment, plaintiff argues that the ALJ improperly rejected the following evidence: (1) plaintiff's own testimony regarding his subjective symptom, (2) the opinions of treating physician and specialist Dr. Senegor, and (3) the testimony of plaintiff's aunt. Plaintiff also contends that the ALJ's findings are not supported by substantial evidence because the ALJ posed an inadequate hypothetical to the vocational expert. The court addresses plaintiff's arguments below, although not in the order presented by plaintiff.

/////

/////

**I. Whether the ALJ Improperly Rejected the Opinions of Dr. Senegor**

Plaintiff asserts that the ALJ erred in rejecting the opinions of Moris Senegor, M.D., a neurosurgeon who had treated plaintiff for nearly three years, on the grounds that the doctor failed to provide clinical findings, the doctor's statements were conclusory, and the doctor's opinion was not consistent with the record as a whole.

Plaintiff describes the physical medical record as consisting of chart notes, lab notes, and reports from San Joaquin General Hospital (tr. at 101-26, 168-211); three reports by Dr. Senegor, who treated plaintiff at San Joaquin General Hospital (tr. at 212-15, 217, 225-29); plaintiff's medication records (tr. at 94-95); and the report of Steve McIntire, M.D., a consultative examiner who performed an orthopedic evaluation of plaintiff on June 21, 2005 (tr. at 127-30). Plaintiff contends that one of Dr. Senegor's reports cites an MRI showing degenerative disc disease and therefore the ALJ was incorrect when she stated that Dr. Senegor failed to make any findings. Plaintiff also contends that Dr. Senegor's reports are consistent with the record as a whole, and it is the incomplete report of Dr. McIntire that is inconsistent.

It is undisputed that the medical opinions of treating physicians are entitled to special weight. Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989); Embrey v. Bowen, 849 F.2d 418, 421 (9th Cir. 1988). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester, 81 F.3d at 830. "At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons." Id. (quoting Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991)). "Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing." Id. (quoting Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983)). However, the ALJ is not required to give weight to conclusory opinions supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111,

/////

1113-14 (9th Cir. 1999) (rejecting a treating physician's conclusory, minimally supported opinion); see also Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).

An ALJ may meet the Commissioner's burden of setting forth specific, legitimate reasons for giving less weight to the controverted opinion of a treating physician by (1) setting out a detailed and thorough summary of the facts and conflicting clinical evidence, (2) stating his interpretation of the evidence, and (3) making findings. Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (citing Magallanes, 881 F.2d at 751). In developing the record and interpreting the evidence, the ALJ is not required to discuss every piece of evidence but must explain why significant probative evidence has been rejected and must reach a decision that is supported by substantial evidence. Howard v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003); Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984).

Here, the ALJ determined at step two of the sequential evaluation process that plaintiff has one medically determinable impairment or combination of impairments that is severe, and that impairment is osteoarthritis. (Tr. at 15.) She found plaintiff's depression non-severe based on the reports of Hisham Soliman, M.D., a psychiatrist who evaluated plaintiff in May 2004, and James A. Wakefield, Jr., Ph.D., a licensed psychologist who evaluated plaintiff in June 2005. Neither examiner found that plaintiff's depressive symptoms limit his ability to perform any basic work activity, mental or physical, and Dr. Soliman opined that plaintiff would be able to perform work activities on a consistent basis. (Id.) Both examiners found malingering suggested or highly likely. (Id.) Plaintiff has not disputed the ALJ's determinations at step two.

At step three of the sequential evaluation process, the ALJ found that plaintiff's impairments do not meet or equal any listed impairment. (Id.) Because plaintiff had no past relevant work, the ALJ continued to step five to determine whether plaintiff has the residual functional capacity (RFC) to perform any work. (Tr. at 16.) After considering the entire record that was before her, the ALJ found that plaintiff has the RFC to sit for six hours, stand for six hours, and walk for six hours, with the ability to lift 50 pounds occasionally and 25 pounds

frequently. (Id.) In making this finding, the ALJ gave great weight to the opinions of Dr. McIntire and less weight to Dr. Senegor' opinions. The ALJ explained her decision as follows:

> The claimant was evaluated by Steve McIntire, M.D., a board certified neurologist, who diagnosed him with probable mild osteoarthritis of the lumbar spine. (Exhibit 3F, page 3 [tr. at 129]). Dr. McIntire does comment that he did not have all of the relevant records to review, but he did have prior progress notes and a prior evaluation, and he did perform a complete physical exam of the claimant. Dr. McIntire's exam points toward the same conclusion of malingering that Drs. Soliman and Wakefield arrived at in evaluating the claimant for depression. Dr. McIntire notes that the claimant uses a cane, although the current examination does not point to a need for a cane. (Exhibit 3F, page 2 [tr. at 128]). The claimant's attorney, Mr. Hannon, argues that Dr. McIntire's opinion should be accorded no weight given that Dr. McIntire did not have all available medical records at the time of his evaluation. (Exhibit 8E, page 2 [tr. at 92]). However, given that Dr. McIntire performed a thorough physical exam and his assessment of malingering is consistent with other providers, his opinion should be accorded substantial weight. Dr. McIntire found the claimant to have no limitations in terms of sitting, standing, or walking and he is limited to lifting not more than 25 pounds frequently and 50 pounds occasionally. (See Exhibit 3F, page 3 [tr. at 129]).
>
> By contrast, Moris Senegor, M.D. evaluated the claimant as "permanently disabled" in one sentence on a Verification of Treatment Form dated July 10, 2006 (Exhibit 10F [tr. at 217]), without any elaboration on what that determination is based. An earlier report by Dr. Senegor shows that the claimant had an MRI revealing degenerative disc disease, however, Dr. Senegor failed to report any treatment history, any clinical findings or the claimant's prognosis. (Exhibit 8F, page 1 [tr. at 212]). Further, Dr. Senegor wrote "unknown" in regard to whether the claimant has the ability to make occupational adjustments in each of eight categories. (Exhibit 8F, page 2 [tr. at 213]). Finally, Dr. Senegor remarks that the claimant has these limitations: no lifting greater than 10 pounds, no bending, stooping or twisting, and no sitting more than 30 minutes. Again, however, Dr. Senegor does not provide any medical or clinical findings which support his assessment of these limitiations [sic]. [Exhibit 8F, page 3 [tr. at 214]). Based on the lack of clinical findings to support Dr. Senegor's conclusory remarks, and that his medical opinion is not consistent with the record as a whole, his opinion is given less weight pursuant to 20 CFR 404.1527(b) and 416.927(b).

(Tr. at 16-17.)

/////

Although plaintiff refers to three reports by Dr. Senegor, only two were in the record at the time of the ALJ's decision. The report dated July 10, 2006 was made on a San Joaquin General Hospital Ambulatory Care Services form titled "Verification of Treatment." (Tr. at 217.) The form salutation "To Whom It May Concern" is followed by one handwritten sentence: "This patient is permanently disabled." (Id.) The undersigned finds that the ALJ accurately described this document as a one-sentence evaluation "without any elaboration on what that determination is based." (Tr. at 16.)

The other report of Dr. Senegor in the record that was before the ALJ is dated March 23, 2006. The first page of this report is an incomplete form titled "Complete Medical Report (Mental)." (Tr. at 212.) Dr. Senegor made no entries for "Treatment History," "Clinical findings made by you," and "Prognosis." For "Laboratory findings," he cited an MRI showing degenerative disc disease and lumbar stenosis.[2] His entry for "Diagnosis (statement of disease or injury based on patient's signs and/or symptoms)" is "Lumbar stenosis," his entry for "Treatment by you" is "Conservative," and his entry for "Response to treatment" is "Poor." (Id.) Attached to the form is an incomplete three-page form titled "Medical Assessment of Ability to Do Work-Related Activities (Mental)." (Tr. at 213-15.) The first page includes an explanation of the purpose of the form, defines terms, and concludes with the following caution in bold print: "It is important that you relate particular medical findings to any assessed limitation in capacity; the usefulness of your assessment depends on the extent to which you do this." (Tr. at 213.) For the

---

[2] In progress notes dated April 6, 2004, Dr. Senegor indicated that plaintiff had an appointment for an MRI on April 22, 2004. (Tr. at 110.) In progress notes dated May 19, 2004, Dr. Senegor noted "awaiting MRI results." (Tr. at 108.) In progress notes dated June 22, 2004, Dr. Senegor indicated that he discussed with plaintiff the results of the MRI performed on April 22, 2004. (Tr. at 195.) He noted severe degenerative disc disease and premature lumbar stenosis. His plan for treatment consisted of epidural injections, continued pain medications, and a follow up appointment in four months. (Id.) The record does not appear to contain the MRI report. Although the ALJ refers to page 35 of Exhibit 7F as a MRI report (tr. at 17), Exhibit 7F is in fact a radiology report of a spinal x-ray taken on January 16, 2004. (Tr. at 202.) In a form dated August 19, 2004, plaintiff indicated that he had an x-ray of his back at San Joaquin General Hospital in early 2004 and an entire body MRI at Delta Radiology subsequently. (Tr. at 59.)

section on "Making Occupational Adjustments," Dr. Senegor wrote "Unknown" as to all eight categories of a claimant's ability to adjust to a job.[3] (Id.)  Nor did he make any entries in the sections for "Making Performance Adjustments" and "Making Personal/Social Adjustments." (Tr. at 214.)  In the section for "Other Work-Related Activities," Dr. Senegor entered "No lifting > [greater than] 10 lb," No [illegible] bend, stoop, twisting," and "No sitting > [more than] 30 min" but failed to describe any medical/clinical findings supporting these limitations, as required by the form.  (Id.)  On the last page of the form, Dr. Senegor made no entry for "Capability to Manage Benefits" and indicated that he last evaluated or treated plaintiff in January 2006.  (Tr. at 215.)  The undersigned finds that the ALJ accurately described this report as one that showed plaintiff had an MRI revealing degenerative disc disease but that "Dr. Senegor failed to report any treatment history, any clinical findings or the claimant's prognosis."  (Tr. at 16-17.)

A third report from Dr. Senegor in the record is dated December 12, 2006, almost two months after the ALJ issued her decision.  (Tr. at 225-29.)  At the conclusion of the hearing on August 9, 2006, the ALJ granted counsel's request to leave the record open for 30 days to allow him to obtain another report from Dr. Senegor because the wrong forms had been provided to him.  (Tr. at 252.)  Counsel subsequently requested a further extension to September 24, 2006.  (Tr. at 41.)  The ALJ granted the request but indicated that she would not grant another extension unless good cause was shown.  (Tr. at 42.)  No further extension was requested.  The third report was submitted to the Appeals Council with counsel's brief.  (Tr. at 222.)  The Appeals Council considered the additional report but did not find that the information provided a basis for changing the ALJ's decision.  (Tr. at 5-6, 8.)

/////

---

[3] This section requires the person completing the form to assess the claimant's ability to follow work rules, relate to co-workers, deal with the public, use judgment, interact with supervisors, deal with work stress, function independently, and maintain attention and concentration.  (Tr. at 213.)  The categories are presented in table form so that the assessor can indicate whether the claimant's ability is unlimited, good, fair, poor, or non-existent.  (Id.)  Limitations are to be described and supported by medical/clinical findings.  (Id.)

The court finds that Dr. Senegor's third report, although properly presented on a form for physical rather than mental evaluation, is also incomplete and conclusory. For example, Dr. Senegor's statement of his clinical findings consists of the following remarks: "Limp. Uses cane.[4] ROM [range of motion] 50%." (Tr. at 225.) The attached "Medical Assessment of Ability to Do Work-Related Activities (Physical)" does not state any medical findings in support of the severe restrictions indicated by Dr. Senegor with respect to plaintiff's ability to sit/stand/walk, perform postural activities, and perform physical functions. (Tr. at 227-28.) Dr. Senegor cites only the MRI report showing degenerative disc disease and lumbar stenosis as medical findings that support restrictions on temperature extremes, vibrations, heights, and moving machinery in plaintiff's work environment. (Tr. at 229.) Dr. Senegor cites no medical findings that support his opinions that plaintiff can never lift more than 10 pounds, can only occasionally lift less than ten pounds, cannot sit or stand or walk for more than one hour each in an eight-hour workday, can only occasionally push or pull, and cannot work in temperature extremes. (Tr. at 226-29.)

On this record, the court finds that the ALJ did not err when she gave less weight to Dr. Senegor's opinions based on their conclusory nature and their inconsistency with the record as a whole. Because Dr. Senegor's opinions were contradicted by the findings and opinions of examining physician Dr. McIntire, the ALJ was required to provide specific and legitimate reasons supported by substantial evidence in the record for giving less weight to Dr. Senegor's opinions. The court finds that the ALJ gave such reasons and that her decision with regard to Dr. Senegor's opinions is adequately supported by substantial evidence on the record. For these reasons, plaintiff is not entitled to summary judgment on this claim.

/////

---

[4] Notably, Dr. Senegor did not indicate that he prescribed or recommended the use of a cane and did not indicate why a cane was necessary. Forms completed by plaintiff and a family member indicate that use of the cane was not prescribed by any doctor. (Tr. at 69, 77.)

## II. Whether the ALJ Improperly Rejected Plaintiff's Subjective Symptom Testimony or the Lay Testimony of Plaintiff's Aunt

Plaintiff asserts that the ALJ improperly rejected his subjective symptom testimony about chronic disabling pain and the effect his symptoms have on his ability to function. Plaintiff argues that, once the ALJ determined that his impairment could produce the degree of symptom alleged, she should not have rejected any of his subjective symptom testimony without making specific findings that stated clear and convincing reasons. Plaintiff concedes that an ALJ may consider (1) a claimant's reputation for lying, prior inconsistent statements concerning his symptoms, and other testimony by the claimant that appears to be less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) a claimant's daily activities. Plaintiff argues, however, that the ALJ erred in finding evidence of malingering in this case.

Plaintiff also asserts that the ALJ should have given full consideration to the testimony of his aunt, Patricia Boyd, and should not have rejected her testimony without reasons germane to the witness. In this regard, plaintiff cites Ms. Boyd's statements that plaintiff spends much of his day in bed, cannot stand very long, does not perform household chores, has a short attention span, has limited reading and understanding skills, and does not handle stress well. Plaintiff also notes Ms. Boyd's testimony that plaintiff's medications make him sleep a great deal and cause him to be incoherent.

### A. Plaintiff's Subjective Symptom Testimony

Once a claimant has presented medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of his symptoms merely because the symptoms are unsupported by objective medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997). Indeed, "'the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so.'" Light, 119 F.3d at 792 (quoting

Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996)). See also Morgan, 169 F.3d at 599; Reddick, 157 F.3d at 722; Matthews v. Shalala, 10 F.3d 678, 679 (9th Cir. 1993) (citing Miller, 770 F.2d at 848).

In evaluating a claimant's subjective testimony regarding pain and the severity of his symptoms, the ALJ may consider the presence or absence of supporting objective medical evidence, along with other factors. Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991) (en banc); see also Smolen, 80 F.3d at 1285. The ALJ may also rely in part on his or her own observations. Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989). However, the ALJ cannot substitute such observations for medical diagnosis. Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990).

Questions of credibility and the resolution of conflicts in the testimony are usually deemed functions solely of the Commissioner. Morgan, 169 F.3d at 599. The determination of credibility is a function of the ALJ acting on behalf of the Commissioner. Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). Accordingly, an ALJ's assessment of credibility should, in general, be given great weight. Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985). Ordinary techniques of credibility evaluation may be employed, and the adjudicator may take into account prior inconsistent statements or a lack of candor by the witness. Fair, 885 F.2d at 604 n.5. Absent affirmative evidence of malingering, the reasons for rejecting the claimant's testimony must be clear and convincing. Morgan, 169 F.3d at 599.

In this case, the ALJ noted plaintiff's complaints of back pain and muscle spasms, his use of a cane to ambulate, and his use of vicodin, carisoprodol, and hydrocordone for pain. (Tr. at 16, citing plaintiff's August 19, 2004 disability report [tr. at 56-62] and counsel's August 8, 2006 hearing brief [tr. at 91-93].) The ALJ also noted plaintiff's hearing testimony with respect to neck, shoulder, arm, and hip pain. (Tr. at 16, 236, 242.) The ALJ cited plaintiff's testimony that his pain is sharp and stays at the level of 10 despite medication. (Tr. at 16, 242-43.) The ALJ found that plaintiff's medically determinable impairments could reasonably be

expected to produce the alleged symptoms of pain but determined that plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely credible.

In reaching her conclusion regarding plaintiff's credibility, the ALJ emphasized that "multiple examiners found the claimant to be malingering with both his physical and mental symptoms." (Tr. at 16.) The ALJ found that Dr. McIntire's complete physical examination

> points toward the same conclusion of malingering that Drs. Soliman and Wakefield arrived at in evaluating the claimant for depression. (Id.) Dr. McIntire notes that the claimant uses a cane, although the current examination does not point to a need for a cane. (Exhibit 3F, page 2 [tr. at 128]). The claimant's attorney, Mr. Hannon, argues that Dr. McIntire's opinion should be accorded no weight given that Dr. McIntire did not have all available medical records at the time of his evaluation. (Exhibit 8E, page 2 [tr. at 92]). However, given that Dr. McIntire performed a thorough physical exam and his assessment of malingering is consistent with other providers, his opinion should be accorded substantial weight.

(Tr. at 16.) The ALJ also took into consideration Dr. McIntire's finding that the radiological evidence does not show lumbar radiculopathy or myelopathy, which indicates that the degenerative disc disease has resulted in limited impact to plaintiff. (Tr. at 17, citing Ex. 3F [tr. at 129].)

The ALJ concluded that

> the claimant's subjective complaints of pain (continuously sharp and at the level of 10 despite taking pain medications) and physical limitations are not fully credible. The records of Dr. McIntire, Dr. Soliman, Dr. Wakefield and Dr. Tyl all suggest malingering. His complaints, including pain and depression, are disproportionate with and not supported by the objective and substantial evidence in the record. Although it is acknowledged that he experiences some discomfort, the objective evidence of record establishes that he has an ability to engage in work-related activities.

(Tr. at 17.)

The court finds that the ALJ gave clear and specific reasons for finding that plaintiff's statements concerning the intensity, duration and limiting effects of his symptoms

were not entirely credible. Inconsistencies in plaintiff's own testimony regarding pain, as well as inconsistencies in the treatment records and evidence of malingering, all serve to render his testimony less than credible. For example, plaintiff testified at the hearing that his pain was sharp and constant at the level of 10. (Tr. at 243.) Despite his admission that his back hurts more at some times than at other times, he insisted that his back pain remains at the level of 10 all the time, including while he sleeps. (Tr. at 243-44.) Moments later, he testified that his medicine eases the pain, "takes the pain away" for two or three hours at a time, and makes it possible for him to put it out of his mind. (Tr. at 244.) He takes eight or nine pills a day, including four or five vicodin, and that the pain medication, which he takes six times a day, reduces his pain to a level of 6 or 7 within 30 minutes. (Tr. at 244-45.) He testified that he usually sees his doctor every two to four months but that he goes to the doctor "all the time" when he gets sharp pains. (Tr. at 240.) However, the court finds no evidence in the treatment records that there have ever been times when plaintiff was treated at the clinic daily, weekly, or even monthly.

The court is not persuaded by plaintiff's argument that the evidence of malingering relied upon by the ALJ is irrelevant. Plaintiff asserts that he did not allege any severe mental impairments and therefore the consultative psychiatric evaluation by Dr. Soliman on May 29, 2004 and the consultative psychological examination by Dr. Wakefield on June 22, 2005 were unnecessary. Plaintiff is mistaken. His application alleged disability based on a variety of conditions, including mental conditions described variously in the record as affective (mood) disorder, depression, and mental/sleep disorder. (Tr. at 19, 26, 48.) In the disability form completed by plaintiff and dated August 19, 2004, he described the following as new physical or mental limitations since he last completed a disability report: "inability to function mentally, problem sleeping, confusion, weight loss, crying spell, and etc." (Tr. at 56.) Plaintiff described himself as being mentally depressed, heavily medicated due to pain, unable to function, and "not there, physically and mentally." (Id.) He wrote that he has problems with sleeping and eating,

confusion, behavior changes, mood swings, hearing voices, can't follow directions, cries a lot, never completes tasks he starts, forgets things, and sees things "different from what other people see." Id. at 62.) Based on these allegations, it was appropriate for the agency to order consultative examinations on the basis of plaintiff's alleged mental impairments. Both examinations were conducted during the time period for which plaintiff seeks SSI benefits. While the consultative examiners found only mild depression or depressive symptoms, and plaintiff does not challenge the determination that he has no severe mental impairment, the reports of the consultative examiners are part of the record before the ALJ and are relevant to plaintiff's credibility.

Nor is the court persuaded by plaintiff's effort to discredit Dr. McIntire's findings on the grounds that Dr. McIntire did not have any contemporary medical records to review and did not actually find malingering but merely referred to old reports of malingering. Plaintiff is mistaken again. Dr. McIntire noted in the history section of his report that "[t]he progress notes that I have indicate a diagnosis of 'malingering.'" (Tr. at 127.) Throughout the report, Dr. McIntire noted discrepancies and inconsistencies. For example, he noted that plaintiff's coordination and gait were within normal limits, plaintiff could walk on his heels and toes and tandem, and there was no foot drop, yet plaintiff used a cane, even though "the current examination does not point to a need for a cane." (Tr. at 128.) On the basis of his detailed physical examination, Dr. McIntire diagnosed "[p]robable mild osteoarthritis of the lumbar spine" that did not suggest any functional limitations other than a restriction on very heavy lifting or carrying activities. (Tr. at 129.)

Based on the affirmative evidence of malingering, the court finds that the ALJ's reasons for not fully crediting plaintiff's testimony are supported by substantial evidence on the record, and the ALJ's assessment of plaintiff's credibility should be given great weight. Plaintiff is not entitled to summary judgment on this claim.

/////

### B. Lay Witness Testimony of Plaintiff's Aunt

The testimony of lay witnesses, including family members, about their own observations regarding the claimant's impairments must be considered and discussed by the ALJ. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006); Smolen, 80 F.3d at 1288; Sprague, 812 F.2d at 1232. Clearly, family members who see the claimant on a daily basis are competent to testify as to their observations. Regennitter v. Comm'r of Soc. Sec. Admin., 166 F.3d 1294, 1298 (9th Cir. 1999); Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993). If the ALJ chooses to reject or discount the testimony of a lay witness, he or she must give reasons that are germane to that particular witness. Regennitter, 166 F.3d at 1298; Dodrill, 12 F.3d at 919.

Patricia Boyd, plaintiff's aunt, did not testify at the hearing but completed a disability function report dated March 20, 2005. The ALJ considered the report and found that it did not establish that plaintiff is disabled. (Tr. at 17, citing Ex. 4E, pp. 9-17 [tr. at 71-79].) The ALJ offered the following reasons for giving little weight to Ms. Boyd's testimony.

> Since Ms. Boyd makes no reference to being trained to make exacting observations as to dates, frequencies, types and degrees of medical signs and symptoms, or of the frequency or intensity of unusual moods or mannerisms, the accuracy of the report is questionable. Moreover, by virtue of the relationship as an aunt of the claimant, she cannot be considered a disinterested third party witness whose statement would not tend to be colored by affection for the claimant and a natural tendency to agree with the symptoms and limitations the claimant alleges. Most importantly, significant weight cannot be given to the witness' testimony because it, like the claimant's is simply not consistent with the preponderance of the opinions and observations by medical doctors in this case.

(Tr. at 17.)

The court agrees with plaintiff that the ALJ failed to apply the proper legal standard in evaluating the testimony of plaintiff's aunt. Pursuant to the Commissioner's regulations, the ALJ must, in certain cases, consider observations made by nonmedical sources about how the claimant's impairments affect his ability to work. 20 C.F.R. § 404.1513(e)(2). It

16

is particularly important for the ALJ to consider lay witness testimony from third parties where a claimant alleges pain or other symptoms not supported by medical evidence in the file and the third parties have knowledge of the claimant's daily activities. Social Security Ruling (SSR) 88-13. This is such a case.

Ms. Boyd has known plaintiff his entire life, talks to him at least twice a week, and visits him at his house. (Tr. at 71.) The ALJ erred in discounting Ms. Boyd testimony on the grounds that she did not establish her credentials for observing medical signs and symptoms and that she might be biased in plaintiff's favor by virtue of their family relationship. These reasons would eliminate consideration of virtually all testimony by the relatives of a claimant. Moreover, no special training is required for the purpose of noticing that a person spends much of his day in bed watching television or for the purpose of observing that the person used to fish a lot, cut his grandmother's lawn weekly, visited with his adult children and grandchildren, and used to be a very good auto mechanic. (Tr. at 71-72.)

Nonetheless, ultimately Ms. Boyd's testimony does not assist plaintiff because she believed the physical changes in his behavior were due to pain and rectal bleeding caused by hemorrhoids and that the mental changes in his behavior were due to grief related to a series of tragic events in his life. However, plaintiff has not claimed disability based on hemorrhoids and rectal bleeding, and Ms. Boyd's testimony sheds no light on symptoms arising from plaintiff's back impairment. Although Ms. Boyd indicates that plaintiff cannot do chores that require him to bend or lift, and does not do house or yard work, she states that such activities make him strain and cause rectal bleeding to occur. (Tr. at 73-74, 76.)

While the ALJ failed to consider Ms. Boyd's testimony on the mistaken grounds that the witness is not a trained observer and may be biased in plaintiff's favor, the testimony in question nonetheless contains no evidence regarding plaintiff's subjective symptoms and functional limitations related to his back condition. To the extent that the ALJ rejected Ms. Boyd's testimony as "not consistent with the preponderance of the opinions and observations by

medical doctors in this case," the ALJ did give one germane reason for discrediting that testimony. See Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005) ("In all, the ALJ at least noted arguably germane reasons for dismissing the family members' testimony, even if he did not clearly link his determination to those reasons."). For these reasons, the court finds that plaintiff is not entitled to summary judgment on this claim.

**III. Whether the ALJ's Findings Are Supported by Substantial Evidence**

Plaintiff contends that the ALJ's findings are not supported by substantial evidence because the ALJ posed a single inadequate hypothetical to the vocational expert and thereby failed to meet the Commissioner's burden at step five of proving that plaintiff can perform work that exists in substantial numbers in the national economy. Plaintiff asserts that the hypothetical question was inadequate because it was based solely on the report and findings of Dr. McIntire and disregarded plaintiff's pain and discomfort, the frequency of taking pain medication, and the reports and findings of plaintiff's treating physician.

At step five of the sequential evaluation, the ALJ is required to question a vocational expert in a manner that properly takes into account the limitations on the plaintiff's abilities to engage in various work-related functions. See Holohan v. Massanari, 246 F.3d 1195, 1208-09 (9th Cir. 2001). "While the ALJ need not include all claimed impairments in his hypotheticals, he must make specific findings explaining his rationale for disbelieving any of the claimant's subjective complaints not included in the hypothetical." Light, 119 F.3d at 793.

In this case, the ALJ posed the following hypothetical to the vocational expert:

> Q . . . . Mr. Williams has no past relevant work, so let's go straight to a hypothetical. Assume a person of the Claimant's age, which is 50, with a tenth grade education, and no past relevant work with the following additional restrictions present. The hypothetical person can sit six hours out of an eight hour day, can stand six hours out of an eight hour day, and can walk six hours out of an eight hour day, can occasionally lift and carry 50 pounds, frequently lift and carry 25. With these restrictions present, are there jobs in the state or national economy for such a person?
>
> A Yes.

| | |
|---|---|
| 1 | Q  Can you list three for me, please? |
| 2 | A  Yes.  He could work kitchen helper, DOT number 318687010, it's medium, unskilled, SVP two, 7,500 jobs in the State of California.  Groundskeeper, DOT number 406685010, medium, unskilled, SVP two, 30,000 jobs State of California.  And hand packager, 920587018, medium, unskilled, SVP two, 12,000 jobs State of California. |
| 5 | ALJ  Mr. Hammond. |
| 6 | ATTY  I have no questions, Judge. |

(Tr. at 251-52.)

The court has determined that the ALJ did not improperly reject plaintiff's subjective symptom testimony, the testimony of plaintiff's aunt, or the opinions of treating physician Dr. Senegor.  The ALJ's RFC determination was properly based on the report and findings of Dr. McIntire and is supported by substantial evidence.  The ALJ's hypothetical, in turn, was properly based on that RFC.  Moreover, counsel did not object to the hypothetical and did not pose a hypothetical of his own.  The court finds that plaintiff is not entitled to summary judgment on this claim.

**CONCLUSION**

The court's scope of review in considering decisions granting or denying Social Security benefits is limited.  Hall v. Sec'y of Health, Educ. & Welfare, 602 F.2d 1372, 1374 (9th Cir. 1979) ("Congress has mandated a very limited scope of judicial review of the Secretary's decisions granting or denying Social Security disability benefits.")  It is not the court's role to re-weigh the evidence or substitute its own judgment for the Commissioner's.  Winans v. Bowen, 853 F.2d 643, 644-45 (9th Cir. 1987).  If there is conflicting evidence supporting a finding of either disability or nondisability, the ALJ may resolve a conflict among experts so long as there is "more than one rational interpretation of the evidence."  Sprague, 812 F.2d at 1230.  See also Batson v. Comm'r, 359 F.3d 1190, 1193 (9th Cir. 2004) ("[I]f evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision").

1         The record in this case contains some evidence of disability. However, there is substantial evidence of nondisability. The ALJ considered all of the evidence and set forth a rational interpretation of that evidence. <u>Matney v. Sullivan</u>, 981 F.2d 1016, 1019 (9th Cir. 1992) ("The trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ."). The ALJ properly discharged her responsibilities of determining credibility and resolving any conflicts or ambiguities in the testimony. <u>See</u> <u>Magallanes</u>, 881 F.2d at 750.

        Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's November 17, 2007 amended motion for summary judgment (Doc. No. 18) is denied;

2. Defendant's November 26, 2007 cross-motion for summary judgment (Doc. No. 19) is granted; and

3. The decision of the Commissioner of Social Security is affirmed.

DATED: April 23, 2009.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:kw
Ddad1/orders.socsec/williams0545.order